ROY R. AND SHARON RHEAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rheal v. Commissioner
Docket No. 32905-87
United States Tax Court
T.C. Memo 1989-525; 1989 Tax Ct. Memo LEXIS 525; 58 T.C.M. (CCH) 229; T.C.M. (RIA) 89525; 11 Employee Benefits Cas. (BNA) 1715; September 26, 1989
Roy R. and Sharon Rheal, pro se. Amy Dyar Seals, for the respondent. COUVILLION
MEMORANDUM FINDINGS OF FACT AND OPINION COUVILLION, Special Trial *528 Judge: This case was assigned pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986. [1]
Respondent determined a deficiency of $ 2,170.60 in petitioners' 1984 Federal income tax. The sole issue for decision is whether a lump-sum payment from an "eligible State deferred compensation plan" under section 457 constitutes a "lump sum distribution" under section 402(e)(4)(A) eligible for 10-year averaging. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and annexed exhibits are incorporated herein by reference. Petitioners were residents of Whitwell, Tennessee, at the time they filed their petition in this case. On February 10, 1981, the Board of County Commissioners of Metropolitan Dade County, Florida, adopted and established the Metropolitan Dade County Deferred Compensation Plan for Public Employees (the Metro-Dade Plan, or the Plan). The Metro-Dade Plan *529 was an "eligible State deferred compensation plan" as defined under section 457(b). In accordance with the eligibility requirements of section 457(b), the Metro-Dade Plan permitted participating employees to contribute a portion of their monthly salary to the Plan through payroll deductions. Limitations were placed on the amount of compensation which could be contributed to the Plan annually. Employees were allowed to choose among alternative vehicles in which their contributions were to be invested under the Plan. Separate accounts were maintained for each employee's contributions, but employees had no ownership rights in their account balances. In accordance with the requirements of section 457(b)(6), employees were merely general unsecured creditors of Metropolitan Dade County to the extent of the fair market value of their account balances. Under section 457(a), compensation contributed to the Plan, and any income derived from such contributions, was not includable in gross income as earned but was deferred until actually paid out to the employee. [2] The Metro-Dade Plan provided for the payment of an employee's account balance upon the occurrence of certain events, such *530 as death, termination of employment, or reaching retirement age. Upon the occurrence of one of these events, employees or their beneficiaries were allowed to select among various payment options, such as a one-time lump sum, fixed monthly or annual payments, or a term certain, life, or joint and survivor annuity. Roy R. Rheal (petitioner) was employed by the Metropolitan Dade County, Florida, Police Department from 1978 through 1984. Between 1981 and 1984, petitioner contributed a portion of his monthly salary to the Metro-Dade Plan by means of payroll deductions. In 1984, petitioner retired from the Metropolitan Dade County, Florida, *531 Police Department. Pursuant to a withdrawal request submitted upon his retirement, petitioner received as a lump sum his entire account balance in the Metro-Dade Plan, which amounted to $ 16,754.20. Petitioner reported receipt of this payment in full on his 1984 Federal income tax return on Form 4972, "Special 10-Year Averaging Method." Petitioner computed his 1984 tax liability based on the 10-year averaging method as set forth on Form 4972. In the notice of deficiency, respondent disallowed use of the 10-year averaging method and recomputed petitioner's liability without regard to such method. OPINION The 10-year averaging method applicable to lump-sum distributions is established and authorized by section 402(e). Section 402(e), in relevant part, provided as follows: (e) Tax on Lump Sum Distributions. -- (1) Imposition of Separate Tax on Lump Sum Distributions. -- (A) Separate Tax. -- There is hereby imposed a tax (in the amount determined under subparagraph (B)) on the ordinary income portion of a lump sum distribution. * * * (4) Definitions and Special Rules. -- (A) *532 Lump Sum Distribution. -- For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient -- (i) on account of the employee's death, (ii) after the employee attains age 59-1/2, (iii) on account of the employee's separation from the service, or (iv) after the employee has become disabled (within the meaning of section 72(m)(7)) from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 or from a plan described in section 403(a). In order to qualify for 10-year averaging, a payment must (1) be paid within one taxable year of the employee; (2) constitute the entire balance to the credit of the employee; (3) be paid on account of one of four enumerated events; and (4) be paid from a trust exempt from tax under section 501, which forms a part of a section 401(a) plan, or from a section 403(a) plan. Within the taxable year 1984, petitioner received his entire *533 account balance in the Metro-Dade Plan. The payment was made pursuant to his separation from service, an event enumerated in section 402(e)(4)(A)(iii). Because the first three requirements of section 402(e)(4)(A) have been satisfied, the fourth requirement is the determinative factor in petitioner's case. The Metro-Dade Plan is an "eligible State deferred compensation plan" under section 457. The plain language of section 402(e)(4)(A) makes it clear that the only distributions eligible for 10-year averaging are distributions from "a plan described in section 401(a)" or "a plan described in section 403(a)" (collectively referred to as qualified plans). The Court finds that a section 457 plan is not a qualified plan; therefore, distributions from the Metro-Dade Plan are not eligible for 10-year averaging. Qualified plans are required to comply with numerous eligibility standards set forth in section 401(a). These include nondiscrimination standards and minimum participation, funding, and vesting *534 standards. Sections 401(a)(3), (4), (7); 411 and 412. Section 457 plans, however, are not subject to these requirements in general and are, therefore, referred to as a type of nonqualified plan. The litany of distinctions between a section 457 plan and qualified plans is too extensive to warrant exhaustive discussion here. One significant distinction noted is that a qualified plan requires employees' benefits to be held in an employees' trust and in all events an employee's right to his accrued benefit derived from his own contributions must be nonforfeitable. Sections 401(a)(7) and 411(a). By contrast, a section 457 plan is not required to utilize an employee's trust and by definition is prohibited from establishing an employee's trust which provides for nonforfeitable benefits. [3] A section 457 plan, therefore, does not constitute a qualified plan because it necessarily violates qualified plan requirements. *535 The legislative history of section 457 reveals that a section 457 plan was not intended by Congress to constitute a qualified plan and, further, that distributions from nonqualified plans are not eligible for favorable lump-sum distribution treatment. Section 457 was introduced to the Code by section 131 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2799, in response to section 1.61-16, Proposed Income Tax Regs., 43 Fed. Reg. 4638 (Feb. 3, 1978), relating to the tax treatment of compensatory payments deferred under certain nonqualified plans. Section 1.61-16(a), Proposed Income Tax Regs., provided as follows: Sec. 1.61-16. Amounts payments of which are deferred under certain compensation reduction plans or arrangements. (a) In general. Except as otherwise provided in paragraph (b) of this section, if under a plan or arrangement (other than a plan or arrangement described in sections 401(a), 403(a), or (b), or 405(a)) payment of an amount of a taxpayer's basic or regular compensation fixed by contract, statute, or otherwise (or supplements to such compensation, *536 such as bonuses, or increases in such compensation) is, at the taxpayer's individual option, deferred to a taxable year later than that in which such amount would have been payable but for his exercise of such option, the amount shall be treated as received by the taxpayer in such earlier taxable year. For purposes of this paragraph, it is immaterial that the taxpayer's rights in the amount payment of which is so deferred become forfeitable by reason of his exercise of the option to defer payment. [43 Fed. Reg. 4638 (Feb. 3, 1978) Emphasis added.] Congress reacted promptly to this proposed change in the treatment of nonqualified deferred compensation plans: Reasons for Change The Congress believed that the regulations concerning nonqualified deferred compensation plans involving an individual election to defer compensation proposed by the Internal Revenue Service on February 3, 1978, if adopted in final form, would have had a serious impact upon the employees of many States and localities. If adopted, the regulations would have prohibited employees of State and local governments from participating in nonqualified, unfunded deferred compensation plans as a means *537 of providing tax-deferred retirement income. Staff of J. Comm. on Taxation, General Explanation of the Revenue Act of 1978, p. 68 (Comm. Print 1979); see also S. Rept. 95-1263, p. 65 (1978), 1978-3 C.B. (Vol. 1) 315, 363; H. Rept. 95-1445, pp. 52-53 (1978), 1978-3 C.B. (Vol. 1) 181, 226-227. The exception noted parenthetically in section 1.61-16(a), Proposed Income Tax Regs., and the expressly stated congressional purpose make it clear that section 457 was enacted solely to codify the tax treatment of nonqualified deferred compensation plans. Further, Congress specifically noted certain distinctions between qualified plans and nonqualified deferred compensation plans to be established under section 457: Because these plans are not designed to be qualified for special treatment under the tax law, they need not comply with Internal Revenue Code rules prohibiting benefits or contributions which discriminate in favor of employees who are officers, shareholders, or highly compensated. [7] * * * H. Rept. 95-1445, p. 52 (1978), 1978-3 C.B. (Vol. 1) 181, 226. *538 Accordingly, the Court holds as follows: (1) Lump-sum distribution treatment under section 402(e)(4)(A) is expressly limited by statute to qualified plans; (2) a section 457 plan is not a qualified plan, as made clear by section 457 itself and its legislative history; and (3) a lump-sum payment from a section 457 plan, therefore, is not a "lump-sum distribution" eligible for 10-year averaging. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 457(a) provides as follows: Sec. 457. Deferred Compensation Plans With Respect To Service For State And Local Governments. (a) Year of Inclusion in Gross Income. -- In the case of a participant in an eligible State deferred compensation plan, any amount of compensation deferred under the plan, and any income attributable to the amounts so deferred, shall be includible in gross income only for the taxable year in which such compensation or other income is paid or otherwise made available to the participant or other beneficiary.↩
3. Section 457(b)(6) provides as follows: (b) Eligible State Deferred Compensation Plan Defined. -- For purposes of this section, the term "eligible State deferred compensation plan" means a plan established and maintained by a State -- * * * (6) which provides that -- (A) all amounts of compensation deferred under the plan, (B) all property and rights purchased with such amounts, and (C) all income attributable to such amounts, property, or rights, shall remain (until made available to the participant or other beneficiary) solely the property and rights of the State (without being restricted to the provision of benefits under the plan) subject only to the claims of the State's general creditors.↩
7. An employer who makes contributions to a qualified plan generally is allowed a deduction for his contributions at the time they are made; deductions for contributions to a nonqualified plan for employees are generally deferred until benefits under the plan are taxable to the employee. Also lump sum distributions from qualified plans are accorded special 10-year income averaging and annuity distributions from qualified plans are accorded estate and gift tax exclusions. The lumpsum distribution rules and the estate and gift tax exclusions apply to certain tax sheltered annuity programs and individual retirement accounts but do not apply to nonqualified plans↩. [Emphasis added.]